IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| TRAVIS PAYLOR, | * | Cr. No. ELH-13-0151 |
| | * | |
| Defendants | * | |
| | * | |

..ooOOOoo..

## GOVERNMENT'S RESPONSE TO DEFENDANT PAYLOR'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL

Now comes the United States of America by its attorneys, Rod J. Rosenstein, United States Attorney for the District of Maryland, and Robert R. Harding and Ayn B. Ducao, Assistant United States Attorneys and responds in opposition to Defendant Travis Paylor's motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29 and motion for new trial pursuant to Fed. R. Crim. P. 33 (*see* ECF Nos. 1465 and 1521). The Defendant's motions should be denied because (1) there was sufficient evidence to sustain the defendant's convictions for racketeering conspiracy and drug trafficking conspiracy; (2) the Defendant was not prejudiced by the disclosure of the results of the examination of the Defendant's cellular phone; (3) the Court did not err in admitting text messages sent to the Defendant that were located on the Defendant's cellular phone as these text messages were statements by co-conspirators; (4) the jury, after receiving proper instructions regarding the racketeering conspiracy count, is presumed to follow the law and evinced no confusion by its careful verdict which resulted in acquittal of three other co-defendants who went to trial.

I.    ARGUMENT

    A.    **The Defendant's convictions were amply supported by the evidence and the Defendant is not entitled for a judgment of acquittal.**

In reviewing a Rule 29 motion for judgment of acquittal, this Court must "consider the evidence viewed in the light most favorable to the government and determine whether any rational jury could have found each essential element of the crime charged beyond a reasonable doubt." *United States v. Wilson*, 115 F.3d 1185, 1191 (4th Cir. 1997). "In reviewing the sufficiency of the evidence, we are not entitled to weigh the evidence or assess the credibility of witnesses, but must assume that the jury resolved all contradictions in favor of the Government." *United States v. Studifin*, 240 F.3d 415, 424 (4th Cir. 2001) (quoting *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998), *cert. denied*, 525 U.S. 1141, 119 S. Ct. 1032, 143 L.Ed.2d 41 (1999)). This Court must also "consider the circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

Evidence presented at trial established that the Black Guerilla Family (BGF) has been the dominant gang at the Baltimore City Detention Center (BCDC), and in several connected facilities, including the Baltimore Central Booking Intake Center (BCBIC), the Women's Detention Center, which houses many men, and in the Jail Industries Building. The evidence also established that Tavon White, a BGF inmate inside BCDC, came to run a racketeering, drug distribution and money laundering conspiracy inside BCDC which was fueled by correctional officers who agreed to assist the conspiracy in a variety of tasks, including smuggling in contraband and loading money onto prepaid debit cards, such as Green Dot cards. The Defendant was a correctional officer at BCDC.

White testified that the Defendant was an important source of supply for Percocets for White until 2010 when the Defendant was moved to BCBIC. White would buy Percocets from the Defendant once or twice a week. During the time that White bought pills from Paylor in 2009 through 2010, White paid the Defendant approximately $10,000. In addition, White testified that the Defendant also sold pills and other contraband to other inmates such as Pooh, Thug, Shine, Hood, Box and Davon Rooks and continued selling contraband to inmates after the Defendant was moved to BCBIC.

In addition to White's testimony, other witnesses testified about the Defendant's interactions with inmates. Tanierdra Finch saw the Defendant passing contraband. Danielle Forrest saw inmates asking after the Defendant because they were looking to get contraband from him. BCDC inmate Davon Rooks testified that saw the Defendant with tobacco, weed, pills and EZ rolls that the Defendant gave to an inmate called Turtle. In addition, Rooks was part of a transaction with another inmate to get tobacco from the Defendant and pay the Defendant via dots or Money Paks sold by Green Dot. Rooks also described that he was able to keep his cellular phone in the jail after he got arrested because the Defendant kept $120 in cash belonging to Rooks.

Finch, Forrest, Katera Stevenson and Rooks stated that the Defendant was good friends with correctional officer Ebonee Braswell. Forrest related that Braswell told Forrest that the Defendant was her partner in contraband smuggling. Rooks and Finch testified that the Defendant was tight with correctional officer Luther Clayton. BGF inmate Randolph Edmonds testified that he saw the Defendant and Clayton get into a dispute over selling "bupe strips" "on the arm" – in other words, giving controlled substances to an inmate without getting payment

first.  Edmonds also saw the Defendant and Clayton selling tobacco, marijuana, Percocet pills and buprenorphine strips to BGF inmates Hood and Box.

Stevenson testified that the Defendant was close with correctional officer Kimberly Dennis.  A wiretapped call between high-ranking BGF inmate Derius Duncan and Dennis involved a discussion of Duncan getting contraband to the Defendant.  Jasmin Jones testified that Braswell and Dennis discussed the Defendant's involvement in contraband smuggling.  A wiretapped call between Braswell and Dennis in which the two discuss the Defendant confirms this connection.

White testified that he paid the Defendant in either cash or via "dots" – a reference to Money Paks sold by Green Dot.  Money Pak cards were recovered from the Defendant's house, as well as a little scrap of paper that read "Do right for me my nigga.  I got $175 in Dots.  More to come."  Federal Bureau of Investigation (FBI) Special Agent Erika Jensen testified that when the Defendant was arrested, he wanted to know "who's telling?" – meaning that he wanted to know who was cooperating with law enforcement against him.

Finally, a very damaged iPhone was recovered from the Defendant's home which was searched by the FBI Computer Analysis Response Team was introduced into evidence.  This cellular "smart" phone contained emails and text messages that were addressed to the Defendant.  The email address used by the phone was also registered to the Defendant.  The Government also introduced an exhibit containing certain text messages recovered from this phone in which the Defendant discussed drug transactions with others, including an apparent go-between for an jailed customer.  The jury convicted the Defendant of both counts of which he was charged: Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d) and Conspiracy to Distribute and Possess with Intent to Distribute Drugs, in violation of 21 U.S.C. § 846.

Thus, there was certainly ample evidence from which the jury could and did conclude that the Defendant was guilty of the charged crimes. Moreover, the jury's guilty verdicts were certainly not against the weight of evidence. Therefore, the Defendant is not entitled to a directed judgment of acquittal.

B.     **The Defendant is not entitled to a new trial**

The Fourth Circuit has held that a "trial court should exercise its discretion to award a new trial sparingly,' and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006) (internal citation omitted). As discussed further below, the Defendant cannot sustain his heavy burden to demonstrate that he is entitled to a new trial on any of the grounds that he raises. Indeed, as discussed in the prior section, there was ample evidence to support the jury's guilty verdicts and the evidence in fact weighs heavily in favor of the Defendant's guilt rather than against it.

*1.     The Court did not err in admitting evidence from the Defendant's phone.*

The Defendant argues that this Court erred in admitting evidence from the Defendant's iPhone on two grounds: (1) text messages to the Defendant from others were inadmissible hearsay; and (2) the Defendant suffered prejudice due to the timing of the disclosure of the evidence. Regarding the Defendant's assertion that text messages to him were inadmissible hearsay, it should be first noted that this argument was not raised in *any* of the Defendant's prior motions to preclude the phone evidence that the Defendant in fact references in his current motion. *See* Def. Supp. Post-Trial Motions at 2 (citing his prior motions at ECF Nos. 1151; 1183; 1184; 1206; 1226; and 1235). Therefore, the Government respectfully submits that this claim is subject to plain error review. *United States v. Mehr*, 2015 WL 502238, at *2 (W.D.N.C.

2015) (grounds for new trial "not objected to at trial" are "subject to plain error review"). The text messages between the Defendant and others which used either coded language or explicit language to discuss drug transactions were not hearsay but instead statements by co-conspirators in furtherance of the conspiracy. *See* Gov't Trial Memo on Co-Conspirator Statements (ECF No. 1177) for cases and authority. Thus, it was not error for this Court to admit them.

Regarding his second basis concerning the phone evidence, the Defendant again raises the claim that he suffered prejudice due to the timing of the Government's disclosure of the results of the search of the Defendant's iPhone. This Court has repeatedly ruled against the Defendant on this ground and its rulings are law of the case. Moreover, the Defendant fails to highlight for the Court the following: (1) all counsel, including the Defendant's, had notice around August 8, 2014, but at the very least well before the motions hearing of September 3, 2014, that the Government was in the process of searching certain electronic devices, including certain cellular phones; (2) Government counsel gave notice to defense counsel that it had the results of the search of the Defendant's phone as soon as notified by the FBI; (3) the results of the search – which included the entire content of the Defendant's phone that the FBI was able to recover – were turned over to the Defendant; (4) upon the Defendant's request and order of the Court, the Government also turned over a searchable document of the text messages from the Defendant's phone as well as identified for the Defendant exactly which text messages that the Government intended to introduce at trial; (5) these text messages were a little over 200 and were also introduced to the jury in an approximately 31-page exhibit; and (6) the evidence from the Defendant's phone was not introduced until very close to the end of trial. Indeed, trial began on November 17, 2014 and evidence from the Defendant's phone was not introduced until January

8, 2015 – almost two months after the start of trial.[1] Moreover, as the Defendant concedes, he introduced his own witness – a paralegal – to discuss the results of her examination of the results of the phone search. Moreover, since it was the Defendant's own phone, he was in the best position to advise his counsel as to ways in which to counter this evidence. Thus, the Defendant cannot establish prejudice due to the timing of the Government turned over the results of the search of the Defendant's phone.

> 2. *The Court did not err in reinstructing the jury, the jury is presumed to follow the law and the jury was not confused as evidenced by its carefully considered verdict that included the acquittal of three of the trial defendants.*

By letter filed on January 29, 2015, not long after the jury had begun deliberations, the Government advised the Court and counsel that it believed that the instructions regarding the racketeering conspiracy were erroneous. After further consultation with all counsel, the Court gave revised instructions to the jury regarding the racketeering conspiracy count and specifically advised the jury that it should ignore the prior instructions and begin deliberations anew with respect to the racketeering conspiracy count. The Court also offered counsel the opportunity to present further closing arguments based on the new and corrected racketeering conspiracy instruction. All counsel declined that offer.

The Defendant advances the argument that he is entitled to a new trial because the jury was confused by receiving erroneous instructions and then being correctly instructed regarding the racketeering conspiracy.[2] There is ample authority for the proposition that a jury is presumed

---

[1] This trial also never proceeded on a Friday and there were several days in which the Court did not hear evidence, including several days in January, around the Thanksgiving holiday and between December 23, 2014 through January 2, 2015.

[2] It is worth noting that the Defendant does not appear to claim that the new instructions received by the jury were erroneous.

to follow instructions it receives. *See, e.g., United States v. Alerre*, 430 F.3d 681, 692 (4th Cir. 2005) ("Ordinarily, of course, we presume that a properly instructed jury has acted in a manner consistent with the instructions"); *United States v. Jackson*, 327 F.3d 273, 297 (4th Cir. 2003) ("We generally follow the presumption that the jury obeyed the limiting instructions of the district court") (internal citation omitted); *United States v. Jones*, 907 F.2d 456, 460 (4th Cir. 1990) ("The jury is generally presumed to be able to follow an instruction to disregard evidence . . . ."). Nevertheless, the Defendant contends that one of the juror notes is evidence of confusion. *See* ECF No. 1424 at 4 (Jury note dated January 29, 2015 at 10:35 am requesting clarification as to the term "racketeering acts"). However, that jury note *preceded* the Court giving the corrected jury instructions on February 2, 2015. In addition, there were no further jury notes asking for clarification of the term "racketeering acts." Thus, there is no reason to believe that the jury was confused and, in fact, every reason to believe that the jury received clarification from the corrected instructions and followed those instructions.

However, the Defendant points to certain cases for the proposition that courts have overturned convictions based on erroneous instructions, citing *United States v. Hudgins*, 120 F.3d 483 (4th Cir. 1997), *Yates v. United States*, 354 U.S. 298 (1957), and *Griffin v. United States*, 502 U.S. 46 (1991). However, these cases are all distinguishable from the instant case. In *Yates*, convictions for conspiring to advocate and teach the overthrow the government were overturned because of erroneous instructions given to the jury. 354 U.S. at 328. However, there was no curative instruction given in *Yates* as in the instant case. *Griffin* concerned whether there was adequate evidence to support the conviction where the evidence did not establish one object of the conspiracy in a multiple object conspiracy but the Supreme Court held that even in such a case, the conviction should not be set aside. 502 U.S. at 59-60. Finally, in *Hudgins*, the Fourth

Circuit found that an erroneous instruction on the "use" prong of the charge of carrying a firearm during and in relation to a drug trafficking offense did not result in overturning the conviction where there was sufficient evidence to support conviction under the "carrying" prong.

The Defendant claims the fact that the jury acquitted three of the eight defendants on trial as evidence of juror confusion since the Defendant claims there was a "considerable amount of evidence arrayed against these defendants." *See* Def. Supp. Post-Trial Motions at 6. The evidence against these defendants consisted largely of testimony by cooperating witnesses testifying regarding each defendant's involvement in the charged conspiracy. Thus, the question of the guilt of these defendants was based largely on a credibility determination and a weighing of the evidence by the jury. Thus, the Government submits that, far from showing that the jury was confused by the corrected instructions, the jury instead carefully followed those instructions, acquitted those individuals whom it did not believe the evidence had proved guilty beyond a reasonable doubt, and convicted those defendants, including Paylor, whose guilt the jury concluded the evidence proved beyond a reasonable doubt.

## II. Conclusion

For the foregoing reasons, Paylor's motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29 and motion for new trial pursuant to Fed. R. Crim. P. 33 should be denied.

Respectfully submitted,

_____/s/_____
Robert R. Harding
Ayn B. Ducao
Assistant United States Attorneys


Served on defense counsel via ECF filing